Dixon H. CAIN, Appellant,

v.

TENNESSEE–LOUISIANA OIL COMPANY, Appellee.

No. 59.

Court of Civil Appeals of Texas.

Tyler.

Sept. 24, 1964.

Rehearing Denied Oct. 15, 1964.

Harry M. Reasoner and Leroy Jeffers, Vinson, Elkins, Weems & Searls, Houston, for appellant.

William C. Harvin and Finis E. Cowan, Baker, Botts, Shepherd & Coates, Houston, for appellee.

MOORE, Justice.

Appellee, Tennessee-Louisiana Oil Company, a corporation, brought this suit against Appellant, Dixon H. Cain, seeking a recovery upon a breach of contract, praying for restitution of the sum of $57,750.00, theretofore paid him, and in the alternative, for damages in the sum and amount of $150,000.00.

Prior to the development of this controversy, Appellant Dixon H. Cain was the president of Fifteen Oil Company, a corporation engaged in drilling and producing oil and gas with some of its properties being situated in the State of Louisiana. In June, 1958, Appellee, through the officials of its parent corporation, Tennessee Gas Transmission Company, sought to acquire the assets of Fifteen Oil Company through direct negotiations with Appellant, Dixon H. Cain, its president. Being unsuccessful, Tennessee Gas Transmission Company, through its stockbroker, then acquired more than 20% of the stock of Fifteen on the open market, without the knowledge of Fifteen. Thereafter, in May, 1960, Fifteen agreed to the sale of its assets to Appellee. Under the terms of the agreement, Fifteen agreed to sell all of its assets to Tennessee-Louisiana Oil Company in exchange for a certain amount of shares of stock of Tennessee Gas Transmission Company. Immediately prior to the consummation of the transaction, the Board of Directors of Fifteen Oil Company, granted severance pay to three of its officers in an amount equal to one and one-half (1½) years' salary. Cain's severance pay was set at $57,750.00, being one and one-half (1½) times his yearly salary. Upon being advised of this action by the Board of Directors of Fifteen, Tennessee made no objection, but according to Cain's testimony reduced the consideration to be paid Fifteen by reducing an equivalent amount of shares of stock from that theretofore offered, and further required that Appellant, Dixon H. Cain, and the other two officers, to execute what they termed as a "retained advisory letter." The letter was as follows:

"May 2, 1960

"Tennessee Louisiana Oil Co.
P. O. Box 2511
Houston, Texas

"Dear Sirs:
"With reference to the Plan of Reorganization entered into on January 14, 1960 and

amended on March 24, 1960, between Fifteen Oil Company, Tennessee Gas Transmission Company and you, each of the undersigned (i) does hereby acknowledge receipt of payment by Fifteen Oil Company, as severance pay, of an amount equal to one and one-half (1½) times his current annual compensation; and (ii) does hereby agree that he will be available to you in a retained advisory capacity for a period of six (6) months from and after May 2, 1960, in order that there will be no abrupt change in management and in order that you may avail yourself of his special knowledge concerning the affairs and properties of Fifteen Oil Company.

> "Yours very truly,
> Dixon H. Cain
> John T. Lockridge
> Harry H. Hudson"

Among the numerous assets transferred by Fifteen to Tennessee was a 50% interest in a mineral lease upon a four thousand (4,000) acre tract of land known as the Martinez Lease. Appellant's father, J. W. Cain, owned one-fourth (¼) of the minerals under the lease, having owned same since 1936.

The mineral lease covering the Martinez four thousand (4,000) acre tract, which Appellee, Tennessee, thus acquired, was originally executed on May 25, 1933, and contained the following provision:

> "After discovering any mineral in paying quantities on the land, grantee may maintain his rights in effect for so long as he pleases by proceeding with reasonable diligence to develop the land; however, the only penalty for grantee's failure so to develop shall be the loss of his rights; and grantee may, if he so elects, at any time after discovering any mineral in paying quantities on the land, surrender any part thereof, when after none of the provisions hereof shall be effective as to the surrendered part, but grantee may continue to hold the unsurrendered part by

complying with the provisions hereof as to the unsurrendered part."

On October 19, 1960, approximately twenty-one (21) days before the expiration of the six-month period in which Appellant agreed to remain available in a "retained advisory capacity," he wrote a letter as attorney-in-fact in behalf of his father, J. W. Cain, addressed to Tennessee-Louisiana Oil Company, in which he advised them of the provisions of the lease hereinabove quoted, and further advised them as follows:

> "During the past ten years, you and your predecessors have not, to my knowledge, conducted any drilling operations, either exploratory or developmental, upon this property, although numerous wells in both categories have been drilled and completed offsetting these lands. Most recently, the F. A. Callery Unit No. 4 Well was successfully completed in May, 1960, as a gas-condensate well in the Rousseau Field, offsetting the Martinez Lease to the north, and it is my understanding that, although you paid 20 per cent of the cost of this well, you have agreed with the offset operators of the well that less than 10 acres of the Martinez Lease should be included in the producing unit. This 10 acres represents about 6 per cent of the Number 4 Unit and about two-tenths of one per cent of the Martinez Lease.

> "Additionally, you have allowed production from the Martinez Lease to decline such that only two wells are still productive. During September, 1960, oil production from the lease averaged less than 75 barrels per day, gas production less than 27 MCF per day.

> "You are hereby notified that you have not complied with the terms of the subject lease in developing the land and you are asked to proceed immediately and without further delay to fully develop such land and protect it from drainage; or, in the alternative, to

reassign the land to its rightful owners subject to your reservation of 20 acres around each well still producing at the time of reassignment.

"This letter is written on behalf of the lessors as a demand for development or reassignment of the lease as provided by its own terms and cannot be otherwise construed. Unless such additional development as evidenced by commencement of actual drilling of at least a 15,000' test will have begun on the Martinez Lease on or before sixty (60) days from the date of this letter, your rights under the subject lease will be considered surrendered by their own terms subject only to the reservation of acreage around such wells still producing at the time of surrender of your rights.

"Yours very truly,
Dixon H. Cain
Agent and Attorney-in-Fact
for J. W. Cain"

A copy of this letter was then sent to some twenty (20) other owners of a mineral interest in the Martinez Tract. Presumably, as a result of this letter, at least one of the other owners, who owned a one-half (½) interest in the tract, demanded the surrender of the lease for failure to develop.

After declining to either develop the lease by drilling, or to attempt a re-negotiation of the leases, the management of Tennessee finally decided to voluntarily surrender all leases except forty (40) acres surrounding each of the producing wells. Shortly after releasing the mineral lease, Cain's father by two conveyances, conveyed all of his interest to his son, Dixon H. Cain, Appellant, who thereafter leased the acreage for oil and gas purposes for the sum of $45,000.00.

Thereupon, this suit was then brought by Tennessee against the Appellant, Dixon H. Cain, for restitution of his severance pay, and in the alternative for damages for breach of contract. Upon trial before a jury, seven (7) Special Issues were submitted to the jury, but only three (3) of the issues are deemed pertinent to this appeal. The issues, together with the jury's verdict thereon, are as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that by virtue of the Plan of Reorganization of Fifteen Oil Company and the Letter Agreement of May 2, 1960, between Dixon Cain and Tennessee Louisiana Oil Company, Dixon Cain agreed to act for Tennessee Louisiana Oil Company to the extent of remaining available in a retained advisory capacity for a period of six months from and after May 2, 1960, in order that there would be no abrupt change in management and in order that Tennessee might avail itself of his special knowledge concerning the affairs and properties of Fifteen Oil Company?" Answer "We do" or "We do not"

Answer "We do"

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that during the six month period in which he had agreed to be available to Tennessee-Louisiana Oil Company in a retained advisory capacity with respect to the properties of Fifteen Oil Company, Dixon H. Cain took action in connection with one of such properties which action was adverse to and against the interest of Tennessee-Louisiana Oil Company in said property?"

Answer "We do" or "We do not"

Answer "We do"

"SPECIAL ISSUE NO. 3

"What sum of money, if any would fairly and reasonably compensate Tennessee-Louisiana Oil Company for the damages, if any, which resulted from

such action on the part of Dixon H. Cain, if any you have found?"

Answer by stating the amount, if any, in dollars and cents.

Answer "$60,000.00"

Based upon these findings, the Court entered judgment against the Appellant, Dixon H. Cain, in the sum and amount of $57,750.00, Appellee having requested the Court to enter judgment only for an amount equal to his severance pay rather than the full amount of $60,000.00 awarded by the jury.

Appellant has assigned three Points of Error by which he contends that the judgment is erroneous because (1) the Trial Court erred in submitting Special Issue No. 1 because it was an attempt to have the jury answer an issue of law rather than an issue of fact, and (2) because there was no evidence Cain agreed to act for Appellee, he having only agreed to remain in a retained advisory capacity for a period of six months, and (3) that there is no evidence to support the submission of Special Issue No. 2, because the contract did not create a fiduciary relationship.

The judgment for Appellee is apparently based upon the theory that the jury in response to Special Issue No. 1 found as a matter of fact that Appellant agreed to bcome an agent or agreed to become bound by some other type of contractual relationship which, as a matter of law, resulted in a confidential or fiduciary relationship, the betrayal of which, in equity, would require Appellant to respond in damages or make restitution of his terminal salary in the amount of $57,750.00. Since the judgment contains no independent findings in support thereof, the primary inquiry resolves itself into a question of whether or not Special Issue No. 1 as submitted by the Court calls upon the jury for a finding of fact or whether it calls upon the jury to make a finding of law.

■ "The question whether an agency relation exists between an alleged principal and agent is a question of law that must be determined solely by the trial court, in the light of the relations of the parties under the agreement between them or in view of their acts and conduct. More specifically, it is the function of the trial court alone to determine whether, under an ascertained state of facts, a legally valid agency relation exists between the parties. The province of the jury in this connection is to determine only whether or not certain facts exist—not whether, if such facts do exist, they are legally sufficient to constitute the alleged agency." Minneapolis-Moline Company v. Purser, Tex.Civ.App.1962, 361 S.W.2d 239, writ ref., n. r. e.

Both the word "act" and "agreed" as contained in Special Issue No. 1 carry definite legal implications.

The word "act" denotes affirmative action or performance and an expression of will or purpose. An "act" signifies something done voluntarily by a person. An act is the result of the exercise of the will. Black says: "In a more technical sense it means something done voluntarily by the person, and of such nature that certain legal consequences attach to it." Duncan v. Landis, 3 Cir., 106 F. 839, 45 C.C.A. 666; Randle v. Birmingham Ry., Light & Power Co., 169 Ala. 314, 53 So. 918, 921.

Webster defines "agreed" as "United or settled in or by a common opinion on consent. Can two walk together, except they be agreed. Amos III: 3." McMurtry v. Addington, (Tex.Civ.App.) 354 S.W.2d 655.

■ In order to determine whether Appellant "agreed" to "act," the Court referred the jury to the "Plan of Reorganization." This was a legal instrument containing some fifteen (15) printed pages. Among other things, it contained numerous representations and warranties by the parties, as well as a provision which was somewhat similar

to the retained advisory letter quoted hereinabove. In view of our disposition of this cause, we see no useful purpose in quoting the provisions of this lengthy instrument.

We believe Special Issue No. 1 to be subject to all of the objections leveled by Appellant in his first Point of Error. The issue, as framed, submits to the jury a mixed question of law and fact, if not purely a question of law. It begins by referring the jury to two separate instruments and then requires the jury to interpret the instruments and to arrive at a conclusion as to whether or not, in their opinion, Appellant "agreed" to "act" on behalf of Tennessee. The issue does not ask the jury to find any particular question of fact, but calls for the jury's conclusion based upon their interpretation of the two instruments.

■ "It is elementary that the trial court should not submit to the jury for their determination an issue involving a mixed question of fact and law. It is likewise axiomatic that an issue should not be submitted to the jury, if the same involves the construction of a contract or written instrument, or if the same calls for the determination of a question of law by them." Hanover Co. v. Hines, 11 S.W.2d 621 (Tex.Civ. App.) aff'd. 23 S.W.2d 289 (Tex.Com. App.); Burgess v. Sylvester, 143 Tex. 25, 182 S.W.2d 358; Schoenberg v. Forrest, (Tex.Civ.App.) 228 S.W.2d 556; Knutson v. Ripson, 163 Tex. 312, 354 S.W.2d 575.

Appellee's argument that Special Issue No. 1 was merely a submission of the issue of whether or not the Appellant did "in fact" agree, would ignore the fact that Special Issue No. 1, specifically tells the jury to find whether " * * * by virtue of the Plan of Re-organization of Fifteen Oil and the letter of agreement of May 2, 1960, between Dixon Cain and Tennessee-Louisiana Oil Company, Dixon Cain agreed to act * * *." Thus, as pointed out before, the Court directed the jury to construe two written instruments simultaneously and to

determine whether or not, under their interpretation, Appellant "agreed" to "act". The vice in the issue lies in the fact that the Court requires the jury to base their verdict, not upon the acts and conduct of Appellant, but upon whether or not the two instruments executed by Appellant amounted to an agreement by him to "act" for Tennessee. It was the duty of the Court to interpret the instruments and to determine the legal effects flowing therefrom. A finding by the jury upon a question of law or a mixed question of law and fact, will not support a judgment based thereon, after a proper objection has been made to its submission.

In view of our ruling requiring a reversal, we will defer a discussion of Appellant's remaining points raising only questions of sufficiency of the evidence.

Because of the error pointed out hereinabove, this cause must be reversed and remanded.

Reversed and remanded.