James W. MILLER, d/b/a A & A Construction Company, Appellant,

v.

Joe PATTERSON, d/b/a Joe's Sand & Gravel & Excavating, Appellee.

No. 17714.

Court of Civil Appeals of Texas, Fort Worth.

May 21, 1976.

John H. Chambers, Arlington, for appellant.

Meier, Keith & Adams, and Darrell L. Keith and Stephen T. Meeks, Euless, for appellee.

## OPINION

SPURLOCK, Justice.

Joe Patterson, doing business as Joe's Sand & Gravel & Excavating, hereinafter referred to as plaintiff, brought this suit in the nature of a sworn account for material sold and delivered to James W. Miller, doing business as A & A Construction Company, hereinafter referred to as defendant. Defendant denied that he had received all the material for which plaintiff sued. Defendant brought a cross-action claiming that he had paid for more material than was delivered. Plaintiff obtained a favorable jury verdict and defendant appealed from the resulting judgment.

We affirm.

Defendant was the prime contractor for the construction of one section (the first 17

miles) of a water pipeline which was being laid for the Tarrant County Water Control and Improvement District No. 1 in the early 1970's. Defendant subcontracted orally with plaintiff for the latter to provide the "bedding" sand for this section. The sand in question was placed in the open trench to a minimum depth of 6", per specifications, in order to cushion the pipe as it was laid and to provide stability after the trench was refilled.

The cost of the sand was based on the price per cubic yard multiplied by the number of cubic yards delivered during the billing period. The price per cubic yard started at 95¢ and increased each four miles, apparently because the trip time of each truck became longer as the distance between the loading site and the job site increased.

Plaintiff began delivering the sand in March, 1971, and made his last delivery on February 28, 1972. His records reflect that he had delivered 33,516 cubic yards through November, 1971, and was paid $46,319.00 for that amount of sand. His records also reflect that during the months of December, 1971, through February, 1972, he delivered an additional 5,853 cubic yards which were billed at the rate of $1.90 per cubic yard and for which he alleged no payment had been made.

On the refusal of defendant to pay for the January-February deliveries, plaintiff brought suit to recover the balance due of $11,120,70; defendant counterclaimed on the theory that he had actually overpaid plaintiff since he had not received all of the sand for which he paid, much less the amount represented by the billing on which plaintiff brought suit. The jury found that plaintiff sold and delivered to defendant sand of the value of $11,120.40 for which he had not been paid and that defendant did not pay for more sand than was delivered.

By his first point defendant complains of the trial court's error in admitting into evidence certain instruments styled "delivery tickets" which were the basis of plaintiff's proof that he had delivered the sand in question. Defendant complains that many of these tickets are not admissible because they were not completed "at or near the time of the act, event, or condition or reasonably soon thereafter," and therefore do not qualify as exceptions to the hearsay rule as being business records under Article 3737e, V.A.T.S. We disagree.

Defendant contends that the loading supervisor for plaintiff had made out individual tickets for each load but that after the first 8 miles of pipeline this method was changed and the owner drove a truck personally and no one was on the loading rack to make the individual tickets at the time the sand was loaded. After the change was made the owner at the end of the day, from his observation of the other truck drivers, would make out the other delivery tickets. During the day he would make some notes and from these notes at the end of the day he would then make out the delivery tickets.

Article 3737e, V.A.T.S., the Business Records Act, provides as follows:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition *or reasonably soon thereafter.*" (Emphasis ours.)

Defendant emphasizes the words, "at or near the time of the act." Subsection (c) also provides that such records may be made reasonably soon after the time of the act or event.

■ It is our opinion that "delivery tickets" or "delivery slips" made in the regular course of business and addressed to the

party receiving the materials delivered and which tickets are signed by a representative of the party receiving the materials are admissible to prove sale and delivery of the materials to such party in the regular course of the materialman's business. *Security Lumber Co. v. Weighard Construction Co.,* 413 S.W.2d 745 (Tex.Civ.App., Texarkana, 1967, affirmed, 423 S.W.2d 287, Tex.Sup., 1967).

With few exceptions these delivery tickets were signed by employees of the defendant within one to two days after the delivery of the sand. They were signed by defendant's brother, who was defendant's employee, or by defendant's foreman, Mr. Tater. The record reflects that these employees had authority to initial the delivery tickets indicating that the merchandise had been received.

The record further reflects that invoices were prepared from the delivery tickets, which invoices were admitted into evidence without objection. Such invoices were compiled from the delivery tickets of which admission in evidence defendant now complains.

■ If any error was committed in the admission of the delivery tickets into evidence, such error was waived by the same evidence being admitted before the jury without objection when the invoices covering the same subject matter were admitted. *Slayden v. Palmo,* 108 Tex. 413, 194 S.W. 1103 (1917); *Kincheloe v. Houston Fire & Casualty Insurance Co.,* 289 S.W.2d 833 (Tex.Civ.App., Texarkana, 1956, no writ hist.).

Point of error No. 1 is overruled.

Point of error No. 2 asserts the trial court erred in admitting into evidence photographs of a section of the pipeline construction other than the section here involved.

Plaintiff offered into evidence Exhibits Nos. 21–26, both inclusive. These are photographs of a section of the pipeline taken while it was being constructed showing the ditch, sand, and pipe. Plaintiff asked the witness if these photographs were substantially the same or the similar presentation of what the pipeline looked in Section 1 during construction. The witness answered, "except the pipe is a little larger." Defendant objected because it was not identical to the one involved. The court then asked the witness the following:

"THE COURT: Mr. Patterson, as I understand it, although these photographs don't portray any part of Section 1, they do show an operation that was substantially the same?

"A. Yes, sir. That is right.

"THE COURT: Except for the size of the pipe?

"A. That's right, sir."

In 2 Texas Law of Evidence, McCormick & Ray (1956 ed.), "Demonstrative Evidence", Section 1465, "Photographs and Motion Pictures", p. 319, the general rule is stated as follows:

"It is said that photographs stand upon much the same footing as maps, models and plans. Whenever a photograph portrays any facts relevant to an issue in the case it is admissible in evidence provided it is first verified by a witness as being a correct representation of such facts.

" . . . What is essential is that he knows the scene or object involved and be able to state that the photograph correctly represents the facts. With this foundation the photograph comes in as demonstrative evidence to explain the testimony of the witness."

■ As a general rule the trial court has wide discretion concerning the admissibility of photographs. In general the sole question is whether or not the court abused its discretion.

In *Texas Employers Ins. Ass'n v. Agan,* 252 S.W.2d 743 (Tex.Civ.App., Eastland, 1952, ref.) that court stated:

" 'The fact that there have been changes in conditions, including even substantial changes, will not necessarily exclude a photograph where the changes can be and are explained, so that the photograph, as explained, will give a court understanding of the condition existing at the time to which

the controversy relates, and be practically instructive.' 32 C.J.S., Evidence, § 715, p. 623.

" ' * * * slight changes will not render the photographs inadmissible and the court has considerable discretion as to the admission of photographs notwithstanding the change.' 9 A.L.R.2d 907, § 4."

■ It is our opinion that such photographs were admissible.

This point is overruled.

■ Defendant by his third point of error states the award of attorney's fees in this case was excessive.

Defendant contends that plaintiff was awarded attorney's fees not only for the prosecution of his case but also for the defense of the cross-action. The award of attorney's fees was excessive to the extent of the amount incurred in defending the cross-action.

Plaintiff admitted that he had been paid for all the sand delivered except for the deliveries between December, 1971, through February, 1972. Defendant answered that he did not owe any sum for this period of time or any sum because plaintiff had been overpaid for sand delivered on the entire project. This answer then made it incumbent upon plaintiff to assume the extra burden of proving the amount of sand he had delivered from the beginning of the job. This necessitated additional investigative and pre-trial work and caused the trial to consume 6 days. Plaintiff, in proving his cause of action, automatically defended defendant's cross-action which only claimed that plaintiff had been paid for more sand than was actually delivered.

It is our opinion that the entire amount of legal expense was incurred in connection with the prosecution of plaintiff's cause of action because of the nature of the answer filed.

The attorney for the plaintiff testified that he had prepared an accurate record of the time spent in the case and that the value of his services was $50.00 per hour. Plaintiff then offered into evidence plaintiff's Exhibit No. 51, being a true, correct and accurate record of the time that the attorney spent in this case. The defendant objected to it as being a "self-serving instrument, and really, his testimony can establish the same facts". This objection was overruled and the exhibit was admitted into evidence.

This was the only objection made to the admission of the exhibits or any of the evidence relating to the reasonable value of the necessary services rendered to the plaintiff by his attorney in connection with the preparation and trial of this case.

The judgment submitted to the jury Issue No. 3:

"What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate plaintiff Joe Patterson's attorney, Darrell L. Keith, for his necessary services rendered to plaintiff Joe Patterson up to and including his services in the trial in this Court?" The jury answered: "$7,975.00".

Defendant did not object to the submission of this issue and the language used in connection therewith. Defendant did not request an instruction to be given to the jury in connection with said issue instructing the jury not to consider any fees incurred in connection with the defense of the cross-action.

Rule 274, T.R.C.P., "Objections and Requests", provides in part:

"A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections."

■ Defendant made no objection or request for instructions as indicated above. He cannot make such objection or complain of such action for the first time in a motion for new trial or upon appeal. *Stroud v. Bridges,* 275 S.W.2d 503 (Tex.Civ.App., Texarkana, 1955, ref., n. r. e.).

The rule here applicable is stated in 4 McDonald Texas Civil Practice (1971 ed.),

"New Trial", Section 18.15, "G. Verdict Excessive or Inadequate", p. 279, as follows:

" . . . A complaint by the party aggrieved that the verdict sets the damages at a sum either too large or too small is but a special example of the contention that findings are supported by insufficient evidence or are contrary to the great weight and preponderance of the evidence. It would seem advisable to include the appropriate complaint in every motion for new trial which attacks a jury finding on the amount of unliquidated damages, since the contention, when established, may lend emphasis to the probable prejudice of other errors. *But when the contention is that the court erred in allowing the jury to consider items not properly to be taken into account in fixing damages, the complaint is directed to a mistake in the charge,* . . .." (Emphasis ours.)

Defendant did not assign as error that the jury's answer to said issue was against the great weight and preponderance of the evidence.

It is our opinion that this asserted error was not properly preserved.

Defendant's point of error No. 3 is overruled.

Defendant by his fourth point of error asserts the court erred in not granting defendant's motion for judgment non obstante veredicto.

Defendant did not assign a "no evidence" point nor "against the great weight of the evidence" point in his motion for new trial. He assigned neither of these points on appeal.

Defendant's amended motion for new trial, paragraph No. V, states: "The Court erred in not granting the Defendant's Motion for Judgment Non Obstante Veredicto *because* the verdict of the Jury was against the *weight* of the evidence." (Emphasis ours.)

Defendant's complaint is that the court should have granted judgment for the defendant. The reason he gives for this is that the jury's verdict was against the great weight of the evidence.

Rule 301, T.R.C.P., provides " . . . upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence. . . ."

Defendant in his motion for judgment non obstante veredicto alleges four grounds for the granting of same: (1) the quantity of sand used was below that claimed by the plaintiff, (2) the delivery tickets had a multiplicity of dates, (3) plaintiff's credibility was substantially questionable, (4) defendant paid for more sand than was used.

Defendant filed neither a motion to disregard any special issue jury finding, nor an objection to submission of the vital fact issue.

Defendant concluded his motion for new trial as follows: "WHEREFORE, PREMISES CONSIDERED, the Defendant moves that the Court set aside the judgment heretofore entered in this cause and grant a new trial." Defendant did not request the court to render judgment for defendant.

■ As indicated above a judgment non obstante veredicto may be rendered "if a directed verdict would have been proper." A directed verdict is not justified because of factually insufficient evidence. A factually insufficient evidence point must be raised in a motion for new trial. *Smith v. Texas Pipeline Company,* 455 S.W.2d 346 (Tex.Civ.App., Corpus Christi, 1970, ref., n. r. e.); 38 Texas Law Review, p. 361, " 'No Evidence' and 'Insufficient Evidence' Points of Error", by Robert W. Calvert; Rules 324, 374, T.R.C.P.

See also 4 McDonald, Texas Civil Practice (1971 ed.), "Judgments, Sec. 17.32, "(d) Judgments Under Rule 301", p. 207, where it is stated: "And Rule 301 does not allow the rendition of a judgment non obstante veredicto when the verdict, or the particular findings challenged, though having support in the evidence, is contrary to the

preponderance of the evidence." See also *Republic Bankers Life Ins. Co. v. Herring,* 463 S.W.2d 743 (Tex.Civ.App., Waco, 1971, no writ hist.).

■ The jury's findings were each supported by evidence of probative value in the record. It would have been improper for the trial court to have directed a verdict for the defendant. Therefore, it was not error to refuse to grant a judgment for defendant non obstante veredicto.

If we assume that the defendant properly raised the point that the jury's verdict was against the great weight and preponderance of the evidence, then that point is overruled because the jury's verdict is supported by the evidence.

This point is overruled.

Judgment affirmed.