W. G. ELLIS, Appellant,

v.

G. C. WALDROP, et al., Appellees.

No. 18596.

Court of Appeals of Texas,
Fort Worth.

Jan. 21, 1982.

Rehearing Denied Feb. 25, 1982.

Garrett & Settle and Rufus S. Garrett, Jr., Fort Worth, for appellants.

Law, Snakard, Brown & Gambill, and Walter S. Fortney, Fort Worth, Bliss & Hughes and Jerry Lee Hughes, Dallas, Hill, Heard & Oneal, and Frank Gilstrap, Arlington, for appellees.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

### OPINION

HOLMAN, Justice.

This suit originated as a declaratory judgment action to construe a recorded agreement under which appellant claimed the first right of refusal to purchase a tract of land.

The action sought to remove cloud on the title by a determination that the land had not been sold until after appellant's right had expired.

The tract was owned by appellant G. C. Waldrop and his late wife. Their son, appellant Thomas Coleman Waldrop, is trustee under his mother's will.

G. C. Waldrop offered appellant the land, but failed to reach agreement and sold it to appellees Aghamalian and Wilemon. Aghamalian later sold his interest to appellee Mahoney.

Upon jury findings, the judgment (1) cancelled appellant's first right of refusal, removing its cloud on the land title; (2) awarded damages to appellees Wilemon and Mahoney upon their cross-claims for slander or cloud of title; and (3) awarded attorneys fees to the Waldrops, Wilemon and Mahoney.

We affirm.

By its terms, the first right of refusal is an agreement between appellant Ellis and G. C. Waldrop only, although it is signed also by Thomas Coleman Waldrop.

The agreement contains the following language:

"Waldrop must first offer the tract . . . to Ellis for his refusal at the same price as is being offered by any third party or parties for the same in a bona fide offer by a proposed purchaser, who is ready, willing and able to purchase same, and . . . the terms offered to Ellis must be not less than those offered by the pro-

posed third party purchaser. Ellis shall have a reasonable time, not to exceed 30 days in which to refuse to purchase same, at which time, this option as to the tract offered for sale or purchase, shall cease and said tract shall be free and clear of any further rights on behalf of said Ellis, only if said tract or tracts is sold to said Third Party and closed."

Appellant urges twenty two points of error.

The first point is that there was no pleading or evidence that the Waldrops offered the land to appellant as required by the first right of refusal before selling to Aghamalian and Wilemon.

Aghamalian and Wilemon went to trial on their second amended original answer which recites the language of the first right of refusal and pleads (1) that G. C. Waldrop's attorney presented appellant with the opportunity to exercise that right; and (2) the right expired by its own terms when appellant failed to exercise it within thirty days.

■ A first right of refusal vests its holder with an *option* to purchase. *Humphrey v. Wood*, 256 S.W.2d 669 (Tex.Civ. App.—Amarillo 1953, writ ref'd n. r. e.).

■ Under a "first refusal" agreement, the primary right that accrues to the option holder is the entitlement to an *opportunity* to buy on the same terms as are offered by any bona fide purchaser. *Gochman v. Draper*, 389 S.W.2d 571 (Tex.Civ.App.— Austin) *rev'd on other grounds*, 400 S.W.2d 545, (1966); *Mecom v. Gallagher*, 213 S.W.2d 304 (Tex.Civ.App.—El Paso 1947, no writ).

■ We conclude that the allegations by Wilemon and Mahoney sufficiently pled that the Waldrops offered the land to appellant as required by the first right of refusal agreement.

In answer to special issue No. 1, the jury found that, acting through their attorney, the Waldrops did give appellant an opportunity to purchase the land at the same price and terms offered by "Aghamalian, Trustee".

Appellant argues that there is no evidence on which to base such a finding.

■ If there is probative evidence which supports the finding, the point must be overruled. In making that determination, it is our duty to consider only the evidence which tends to support the jury's findings, view such evidence in a light most favorable to those findings, and disregard all contrary evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Butler v. Hanson*, 455 S.W.2d 942 (Tex. 1970).

The evidence shows that by letter dated April 15, 1977, G. C. Waldrop's attorney presented appellant with a copy of a contract of sale between Waldrop and "Richard A. Aghamalian, Trustee", covering the land for which appellant then held the first right of refusal.

The contract set a total price of $55,-000.00 and designated Aghamalian (a) as the purchaser in a "trustee" capacity and (b) as a co-broker entitled to share in a real estate commission of $3,300.00 for negotiating the sale.

On its face, the Aghamalian contract was made subject to appellant's first right of refusal and was conditioned upon appellant's waiver or release of that right.

The contract required Aghamalian, trustee, to escrow a $4,500.00 letter of credit if appellant's signature was obtained on a waiver or release.

The April 15, 1977, letter also tendered to appellant a proposed contract whereby he could purchase the land "upon the same terms and conditions as those offered to Mr. Waldrop by Richard A. Aghamalian, Trustee". The letter requested appellant to accept or reject within thirty days.

A comparison of the two contracts shows that Aghamalian would not be required to escrow the $4,500.00 letter of credit until five days after Waldrop obtained waiver or release of appellant's first right of refusal; while appellant would be required to make such an escrow within five days of signing his contract.

Appellant also emphasizes that Waldrop never required Aghamalian to escrow a letter of credit.

The evidence shows that rather than the sale being closed into "Richard A. Aghamalian, Trustee", it was closed into "Richard A. Aghamalian and Brad L. Wilemon".

Appellant argues that while both contracts set a $55,000.00 sales price, Aghamalian was able to offset his share of the real estate commission against the $55,000.00, in effect paying less for the land than appellant would have been required to pay.

Appellant therefore contends that the terms and conditions offered him were not the same as those in the Aghamalian contract.

Appellant initially responded to Waldrop by letter dated May 17, 1977. That letter protested that Aghamalian's real estate commission would render his contract materially different from the one offered to appellant. The letter stated that the appellant "would appreciate being offered a contract on the same terms as the purchasers [Aghamalian, Trustee] ..."

When subsequent negotiations failed to produce agreement with appellant, the sale was closed into Aghamalian and Wilemon.

After closing, the Waldrops agreed to escrow $5,500.00 of the sales price, until the outcome of the purchasers' future efforts to obtain release of a drainage easement discovered on the land.

Appellant cites this as an additional variance between the terms offered him and those in the Aghamalian contract.

On the other hand, appellees point to evidence that (1) only a written release of appellant's first right of refusal could have triggered Aghamalian's duty to escrow a letter of credit; but appellant never signed a release; (2) the $5,500.00 drainage easement escrow by the Waldrops was not required by Aghamalian's contract, but was a matter agreed upon after closing; (3) Aghamalian was a licensed real estate broker and did perform services entitling him to a commission; (4) the Aghamalian contract identified him as a "trustee" for undisclosed others (e.g., Wilemon); and (5) appellant's conduct during the negotiations led appellees to believe he would not exercise his right of refusal.

Appellees in effect argue that such evidence would lead reasonable minds to conclude that any differences in the two contracts were illusory or insignificant, and that the appellant waived his right to buy the property.

Also in evidence is a tape recording, and its typed transcription, of an April 12, 1978, hearing before the planning and zoning commission of the City of Arlington, after the land purchase by Aghamalian and Wilemon, to consider rezoning.

At that hearing, appellant told the commission that although he had considered exercising his first refusal right when he had been given the opportunity by Waldrop, he had not opposed Aghamalian's 1977 purchase of the land.

To sustain appellant's first point of error would require us to conclude that the evidence we have reviewed amounted to no evidence at all.

Disregarding, as we must, all evidence to the contrary, we conclude there was evidence which supports the jury's finding in special issue No. 1 that appellant did receive an opportunity to purchase for the same price and terms as Aghamalian.

We overrule appellant's first point of error.

The jury found that appellant did not exercise his right of refusal within thirty days after he received the offer, and that he waived his right.

Appellant's second point of error asserts that the first right of refusal is a contract involving land and, under the statute of frauds, only a written waiver supported by consideration would be enforceable.

We consider this in connection with appellant's sixth and seventh points of error which contend there was both no evidence and insufficient evidence of waiver.

A jury finding based upon evidence of oral rather than written waiver is consist-

ent with decisions of Texas courts which long have sanctioned oral waiver of the strict performance of the terms of an option contract relating to real estate. *Puckett v. Hoover*, 146 Tex. 1, 202 S.W.2d 209 (1947); *Hage v. Westgate Square Commercial*, 598 S.W.2d 709 (Tex.Civ.App.—Waco 1980, writ ref'd. n.r.e.); *Broady v. Mitchell*, 572 S.W.2d 36 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd. n.r.e.).

■ Reviewing all of the evidence in the record, we conclude that there was probative evidence of appellant's waiver of his right of refusal, and the jury's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

In special issue No. 1, the jury found that appellant had been given the opportunity to buy, under the first right of refusal agreement. By that agreement's language, time was of the essence, and appellant's right terminated thirty days after he was given the opportunity to buy.

■ We hold that when appellant did not accept his opportunity within thirty days, the right to buy was waived as a matter of law, and the agreement was at an end.

Appellant's second, sixth and seventh points of error are overruled.

We next consider appellant's third point which attacks special issue No. 1–A as being a mixed question of law and fact.

The issue asked the jury to determine whether the Waldrops substantially performed their duty to offer the subject property to appellant as required by the first refusal instrument.

The jury answered "yes".

■ As a general rule, a mixed question of law and fact which would require the jurors to interpret instruments and determine their legal effect should not be asked, and the jury's answer to such a question will not support a judgment based on that finding. *Cain v. Tennessee-Louisiana Oil Company*, 382 S.W.2d 794 (Tex.Civ.App.—Tyler 1964, no writ).

Appellant cites *Cain* in his challenge of special issue No. 1–A. We observe, however, that in *Cain*, the special issue which was held to be a defective mixture of law and fact, asked the jury to decide whether the effect of two written documents was to bind Mr. Cain to a particular course of action, for a purpose described in the issue.

*Cain* is therefore distinguishable, because it asked the jurors to interpret the documents and their legal effect.

■ In the instant case, special issue No. 1–A did not ask the jurors to interpret the first right of refusal and its legal effect. Rather, that issue asked them to decide, upon the evidence, whether the Waldrops *substantially performed the acts* required by the language of the right of refusal instrument.

We have determined that Wilemon and Mahoney pled that the Waldrops fully performed the required acts by offering appellant the opportunity to buy the land for the same price and terms as Aghamalian.

■ A pleading of *full* performance of an agreement is sufficient to support submission to the jury of an issue as to *substantial* performance. Tex.R.Civ.P. 279; *Del Monte Corp. v. Martin*, 574 S.W.2d 597 (Tex.Civ.App.—San Antonio 1978, no writ).

We overrule appellant's third, sixth and seventh points of error and therefore do not reach points four, five, eight, nine, and ten.

In points eleven and twelve, appellant asserts that there is both no evidence and insufficient evidence that he led Aghamalian to believe appellant did not want to purchase the property.

■ Having considered all of the evidence, both that tending to prove and that tending to disprove such finding of the jury, we conclude there was evidence, and that the finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Points eleven and twelve are overruled.

Appellant's thirteenth and fourteenth points of error attack the jury findings which support the slander or cloud of title cross-action of Wilemon and Mahoney.

Appellant asserts that there is no evidence that he unreasonably delayed after the sale was closed before seeking to enforce his first right of refusal or that he acted without reasonable cause in not releasing it.

As with the other no evidence points, we disregard all evidence that does not support the jury's finding.

■ The evidence shows that the sale to Aghamalian and Wilemon closed on August 4, 1977; but on April 12, 1978, when appellant testified in the planning and zoning hearing, he had not yet sought to enforce the right of refusal.

We conclude there was probative evidence from which the jury could find unreasonable delay, and that the finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ The evidence contains appellant's testimony that he allowed the "first right" instrument to remain recorded in the Deed Records and refused to release it, while understanding that the recorded document could inhibit development of the property.

Points thirteen and fourteen are overruled.

Appellant's fifteenth point contends the trial court erred in failing to instruct the jury, as to the slander/cloud cross action, to limit consideration of damages only to those legally recoverable in such actions.

■ Finding no request in the record for any such instruction, we must hold that it was waived. Tex.R.Civ.P. 279; *Colandino v. El Paso Nat. Bank, Inc.*, 585 S.W.2d 851 (Tex.Civ.App.—El Paso 1979, no writ).

The fifteenth point is overruled.

In his sixteenth point of error, appellant challenges the award of damages to Wilemon and Mahoney for slander or cloud of title, because the loss of a specific sale was not alleged or proved.

The seventeenth point is that there is no evidence of appellant's malice and, without such proof, damages awarded for slander or cloud of title may not stand.

The courts of this state have required proof of the loss of a specific sale as a requisite to an award of damages for slander of title. *Shell Oil Co. v. Howth*, 138 Tex. 357, 159 S.W.2d 483 (1942).

■ The more recent trend of law, however, departs from that requirement. *Sanders v. A. H. Belo Corp.*, 621 S.W.2d 205 (Tex.Civ.App.—Texarkana 1981, writ granted); *Walker v. Ruggles*, 540 S.W.2d 470 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). We believe the trend is sound, and the loss of a specific, pending sale is not essential to an award of damages in a slander of title suit.

The trend has its foundation in the Restatement Of Torts section 633, comment "f", expressing the following rationale for situations where loss is caused by slander which prevents sale to *unknown* purchasers:

"In such case the impossibility or the great difficulty of showing the identity of the particular person or persons who were dissuaded from purchasing the thing by the publication of the disparaging matter makes evidence of the owner's inability to avail himself of a ready market for the thing in question sufficient proof of the loss ..." *Walker*, 475.

We do not know what the Supreme Court's eventual disposition of *Sanders* may be as to proof required to establish damages for slander of title.

The case at bar, however, was pled alternatively, seeking damages for cloud on title caused by appellant's failure to release the recorded right of first refusal after he had not opposed the sale to Aghamalian and Wilemon.

■ Damages for cloud on title may be awarded upon sufficient proof of loss, without showing loss of a specific sale. *Reaugh v. McCollum Exploration Co.*, 140 Tex. 322, 163 S.W.2d 620 (1942).

The sufficiency of evidence of damages attributable to either slander or cloud of title in the case at bar is not before us by point of error.

■ Having reviewed all of the evidence, we conclude that there was probative evidence from which the jury could find that the appellant acted with malice in not releasing the recorded instrument clouding the title to the land. The jury's finding of malice is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Appellant's sixteenth and seventeenth points are overruled.

His eighteenth point is that none of those who purchased the property could have been bona fide purchasers because the recorded right of refusal placed them on notice of appellant's claim.

That the appellees had notice of appellant's right of refusal is not in dispute.

The question is whether the appellees who bought the property made advance inquiry into the recorded claim sufficient to allow them the status of bona fide purchasers for value.

■ When investigation produces facts sufficient to satisfy a prudent inquirer that a recorded claim will not be enforced by its holder, then the inquiring party may be a bona fide purchaser, even where the document from which the claim derives remains of record. *Bacon v. O'Connor*, 25 Tex. 213 (Tex.1857); *W. L. Moody & Co. v. Martin*, 117 S.W. 1015 (Tex.Civ.App.1909, no writ); *Dodd v. First State Bank & Trust Co. of Hollis, Okl.*, 64 S.W.2d 1021 (Tex.Civ.App.—Amarillo 1933, no writ).

■ Answering special issues 14, 15, and 16, the jury in effect found that before buying the land from the Waldrops, the purchasers made sufficient investigation of appellant's claim to the right of refusal. The notice of recordation did not preclude the buyers from having the status of bona fide purchasers for value.

Point eighteen is overruled.

Appellant's nineteenth, twentieth and twenty-first points assert error in the award of attorney fees to the Waldrops.

Appellant reasons that the award was not proper because (a) there was no cause of action for any breach of contract, (b) the Waldrops did not own the land title, clouded or otherwise, at time of suit, and (c) the judgment does not segregate the attorney fees applicable to the various causes of action alleged by the parties.

Since its 1977 amendment, art. 2226, Tex. Rev.Civ.Stat.Ann. (Supp.1981) has authorized the recovery of attorney fees in "suits *founded on* oral or written contracts". (emphasis added).

■ The words "founded upon" do not limit the statute's applicability to suits for *breach* of contract.

■ The suit at bar was founded upon conflicting claims under a contract which provided a first right of refusal. We hold that an award of attorney fees to the Waldrops was authorized by art. 2226.

■ We also hold that segregation of attorney fees among the separate causes of action alleged was not required. *Wilkins v. Bain*, 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ); *Damstra v. Starr*, 585 S.W.2d 817 (Tex.Civ.App.—Texarkana 1979, no writ); *Miller v. Patterson*, 537 S.W.2d 360 (Tex.Civ.App.—Fort Worth 1976, no writ).

Points nineteen, twenty and twenty-one are overruled.

The twenty second point attacks the award of attorney fees to Wilemon and Mahoney in their action for cloud or slander of title. Appellant urges that error results from a failure to segregate the fees applicable to the cloud action from those applicable to the slander action.

We observe that the jury was not given an issue on attorney fees. Instead, the matter was presented to and determined by the court, apparently by agreement.

■ There are no findings of fact or conclusions of law, and none were requested. In their absence, we are required to uphold the trial court's action on any theory of law supported in the record. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978).

The record contains testimony of counsel for Wilemon and Mahoney, as to the allocation of the attorney fees between the action for slander and that for removal of cloud on the title.

We conclude that the trial court's award of attorney fees has support in the evidence and that segregation of the fees in the judgment is not required by law. *Wilkins, supra; Damstra, supra.*

The twenty-second point is overruled.

We do not reach appellees' cross point which was waived at oral argument before this court.

Judgment of the trial court is affirmed.