**ANGLO–DUTCH PETROLEUM INTERNATIONAL, INC., Anglo–Dutch (Tenge) LLC, and Scott Van Dyke, Appellants**

v.

**Forest Hunter SMITH, Appellee.**

No. 14–06–00580–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 20, 2007.

---

Byron C. Keeling, Jacks C. Nickens, Bradley Wayne Hoover, Jessica Lynne Wilson, Houston, Craig Trively Enoch, Austin, TX, for appellants.

Carl D. Kulhanek, Jr., William Fred Hagans, Houston, Vincent L. Marable, III, Wharton, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.*

## OPINION

RICHARD H. EDELMAN, Senior Justice.

Anglo–Dutch Petroleum International, Inc., Anglo–Dutch (Tenge) LLC, and Scott Van Dyke appeal a judgment entered in favor of Forest Hunter Smith on the grounds that: (1) the evidence is legally and factually insufficient to support the trial court's findings of fraud, conversion, and breach of fiduciary duty; (2) any recovery for conversion or breach of fiduciary duty is barred by the economic loss rule; (3) the agreement between the parties was unenforceable because it violated usury and securities laws and was against public policy; (4) the award of exemplary damages and attorney's fees was an improper double recovery; and (5) the trial court erred in failing to file additional findings of fact and conclusions of law. We affirm as modified.

* Senior Justice Richard H. Edelman sitting by

## Background

Van Dyke is the majority shareholder in Anglo–Dutch Petroleum and Anglo–Dutch (Tenge) (collectively, "Anglo–Dutch"). Van Dyke formed Anglo–Dutch for the purpose of developing the Tenge oil and gas field in Kazakhastan. In 1997, Halliburton considered joining Anglo–Dutch in the exploration of the Tenge field, and entered into a letter of intent with Anglo–Dutch. However, in 2000, Anglo–Dutch filed suit against Halliburton (the "Halliburton lawsuit") over their dealings on this project.

Needing money to finance the Halliburton lawsuit and operate its business, Anglo–Dutch entered into several Claims Investment Agreements (the "Agreements") in which investors put up funds in return for a portion of Anglo–Dutch's recovery, if any, from the Halliburton lawsuit. Smith was one of these investors and signed two Agreements in which he agreed to invest a total of $50,000. From its cash recovery in the Halliburton lawsuit, Anglo–Dutch was to pay Smith his initial $50,000, eighty-five percent of $50,000, and then an additional eighty-five percent for each year that passed from the date of the agreement to the time of Anglo–Dutch's recovery.

The trial of the Halliburton lawsuit resulted in an award of $106 million to Anglo–Dutch, and Anglo–Dutch and Halliburton subsequently entered into a confidential settlement agreement. However, before the settlement, Anglo–Dutch contacted its litigation investors, seeking to negotiate a reduced payment on the Agreements. Although some of the investors agreed, others, including Smith, refused, and Smith filed this lawsuit against Anglo–Dutch. After a bench trial, the trial court: (1) entered judgment awarding Smith actual damages of

assignment.

$151,876, exemplary damages of $303,752, and attorney's fees of $60,000; and (2) issued findings of fact and conclusions of law, finding Anglo–Dutch and Van Dyke liable on Smith's claims for fraud, breach of fiduciary duty, conversion, and breach of contract.

## Standard of Review

 A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards as are applied in reviewing the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In reviewing legal sufficiency, we credit evidence favorable to the verdict if reasonable jurors could and disregard evidence contrary to the verdict unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).[1]

## Fraudulent Inducement

 The trial court based its finding of liability for fraud on its findings of fact that: (1) Van Dyke always considered the funds advanced by investors to be loans; (2) Van Dyke represented the transaction as a legitimate investment with risk; (3) Van Dyke did not disclose to the investors, including Smith, his opinion and belief that the transaction was a loan; (4) Van Dyke's representation that the transaction was a legitimate investment when he actually considered it to be a usurious loan was a false, material representation that Van Dyke made with knowledge of its falsity and with the intent that Smith rely on and

act on the misrepresentation; (5) Smith did not know that Van Dyke considered the monies that he advanced to Anglo–Dutch to be loans; (6) Smith relied and acted on Van Dyke's representation that Smith's transaction with Anglo–Dutch was not a loan but a legitimate investment and entered into the contracts.

Appellants' first issue challenges the legal and factual insufficiency of the evidence to prove fraudulent inducement, among other things, on the ground that any representation that the Agreements were investments rather than loans was not false,[2] as reflected by the trial court's findings of fact and conclusions of law. We agree. The trial court's findings and conclusions state that Anglo–Dutch solicited an investment from Smith and that the Agreements were not loans or usurious loans, apparently based on the finding that the Agreements contain no absolute obligation on the part of Anglo–Dutch to repay any amount of money. Therefore, any representation that the transaction was an investment was not false and could not support a finding of fraud.

 Appellants also contend that the trial court's findings and conclusions do not support a finding of fraud liability based on a theory that appellants made a false promise of future performance[3] because that theory was not pleaded and the evidence is legally and factually insufficient to support such a finding. Although Smith's brief does not appear to rely on

---

1. Because appellants' factual sufficiency challenges do not affect our disposition, we do not recite the factual sufficiency standard of review.

2. *See, e.g., In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001) (reciting elements of fraud, including the making of a false representation).

3. A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). However, to support such a misrepresentation, evidence must be relevant to the defendant's intent at the time the misrepresentation was made. *Id.*

this theory, the trial court's finding of fact number 48, referring to Van Dyke's representation that the transaction was a legitimate investment when he actually considered them to be usurious loans, could be read to suggest such a theory.

Appellees have cited, and we have found, no evidence that Van Dyke made any promise in the Agreements with an intent not to perform. Moreover, even if he believed at the time of entering the Agreements that they would not be enforceable *as loans* due to usury laws, he did not structure them as loans,[4] and there is no evidence that he did not intend to pay the specified amounts as returns on the investments. Therefore, the trial court's finding of liability for fraud is not supported by the evidence, and appellant's first issue is sustained

### Conversion

■ Appellants' second issue challenges the finding of liability for conversion, in part, on the ground that Smith sought only to recover money, not a specific item of property.[5] Smith responds that his conversion claim sought a specific, identifiable sum of money, and thus a property interest, rather than mere repayment of indebtedness, because Smith had been assigned, and was seeking to recover, an actual ownership interest in his proportionate share of the Halliburton recovery.

We disagree with Smith's contention in this regard for two reasons. First, the assignment agreements on which he relies do not purport to convey an outright ownership interest, but merely assign the interests in the recovery as collateral securi-

ty for payment of the obligations that are due under the Agreements. Second, and, more importantly, the trial court's judgment does not award Smith's conversion recovery out of any specific or identifiable proceeds of the Halliburton settlement or otherwise,[6] but simply awards a single actual damage amount against appellants for all of the claims Smith asserted. Therefore, we can find no basis to affirm an award for conversion, and appellants' second issue is sustained.

### Breach of Fiduciary Duty

Appellants' third issue challenges the trial court's finding of liability for breach of fiduciary duty, in part, on the ground that the evidence is legally and factually insufficient to show that the necessary relationship of trust and confidence existed between appellants and Smith.

■ A fiduciary relationship can be either formal and informal. A formal fiduciary relationship arises as a matter of law in certain relationships, such as attorney-client, partnership, and trustee relationships. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex.2005); *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). An informal fiduciary relationship can arise from a moral, social, domestic or purely personal relationship of trust and confidence, but to impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to and apart from the agreement made the basis of the suit. *Meyer*, 167 S.W.3d at 331. Not every relationship involving a high degree of

---

4. Nor does it logically follow that a belief that an agreement is unenforceable equates to an intent not to perform it.

5. *See, e.g., Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 128 (Tex. App.-Houston [14th Dist.] 2006, no pet. h.).

6. Although the trial court found that appellants exercised dominion over a specific and identifiable sum of money belonging to Smith, it did not identify that sum other than by amount.

trust and confidence rises to a fiduciary relationship. *Id.* at 330. Where, as here, the underlying facts are undisputed, the determination of the existence of a fiduciary duty is a question of law. *Id.*

In this case, Smith contends that an informal fiduciary relationship was created by the parties' execution of a confidentiality agreement that prohibited disclosure of information regarding the Agreements and required Smith to trust and rely upon appellants to protect the property interests assigned to him because he could not disclose his interest to Halliburton's counsel, and any settlement proceeds would be paid to Anglo–Dutch or their attorneys. To the extent Smith's position equates a confidentiality agreement to a relationship of trust and confidence giving rise to a fiduciary duty, he has cited, and we have found, no authority supporting the notion that confidentiality agreements can create fiduciary relationships. Similarly, although every arms-length contractual arrangement entails a degree of trust that the other parties will perform their obligations, few create fiduciary duties. Because Smith has cited and we have found no authority that would support the existence of a fiduciary duty in the relationship that existed between appellants and Smith, we sustain appellants' third issue.

## Breach of Contract

 Appellants' fourth issue challenges the finding of liability for breach of contract on the grounds that: (1) the Agreements were usurious loans, (2) alternatively, if the Agreements were not loans,

they were void, unregistered securities, and (3) the Agreements were unenforceable because they violated public policy. In *Haskell*, the First Court of Appeals addressed these same challenges that Anglo–Dutch asserted in a case against another investor. *See Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87 (Tex. App.2006). The opinion in that case concluded that: (1) the agreements did not meet the definition of a "loan" and were thus not usurious transactions;[7] (2) even if the investment agreements could be considered securities, appellants, as sellers rather than purchasers of the securities, have no standing to bring a claim based on the securities being unregistered;[8] and (3) the agreements did not violate public policy because they did not vest control over the litigation in uninterested third parties. *Id.* at 103–05. Although we are not bound by that decision of the First Court, this court has elected to follow it,[9] and we do so again in this case.[10] Accordingly, appellants' fourth issue is overruled.

## Remaining Issues

Appellants' fifth and sixth issues challenge the award of exemplary damages as: (1) being an improper double recovery with the award of attorney's fees; and (2) improperly imposing exemplary damages collectively against appellants without making specific findings with respect to each defendant. Appellants seventh issue contends the trial court erred in not making additional findings of fact on Smith's claims for conversion, breach of contract, and exemplary damages. However, be-

---

7. *Id.* at 95–101.

8. *Id.* at 103.

9. *See Anglo–Dutch Petroleum Int'l, Inc. v. Littlemill Ltd.*, No. 14–06–00921–CV, 2007 WL 2826900 at * 2–3 (Tex.App.-Houston [14th Dist.] Oct. 2, 2007, no pet. h.).

10. Although the trial court found that appellants were collaterally estopped from asserting these claims by the decision in *Haskell*, we need not address that issue.

cause our sustaining of appellants' first three issues requires reversal of the award of exemplary damages [11] and render appellants' complaint on the findings of fact immaterial, we need not address the fifth, sixth, or seventh issues.

Therefore, we reverse the portion of the trial court's judgment awarding exemplary damages, render judgment that Smith take nothing on his claim for exemplary damages, and affirm the remainder of the judgment.

---

**11.** *See, e.g., Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998) (noting that recovery of punitive damages requires a finding of an independent tort with accompanying actual damages).