

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00005-CV

_____

HARDING COMPANY AND
HARDING ENERGY PARTNERS, LLC, Appellants

V.

SENDERO RESOURCES, INC., ET AL., Appellees

On Appeal from the 217th Judicial District Court
Angelina County, Texas
Trial Court No. CV-41879-08-11

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

This opinion on rehearing is issued as a substitute for our original opinion issued January 26, 2012.

This is an appeal[1] of a final summary judgment concerning contract and tort claims arising out of an agreement between several companies to acquire oil and gas leases. Harding Company[2] contracted with Sendero Resources, Inc., to acquire oil and gas leases in a region of East Texas including parts of Nacogdoches, Angelina, San Augustine, Sabine, Jasper, and Newton Counties. Ted Walters is the president and sole shareholder of Sendero. Walters is also the president and sole shareholder of TWW Tyler, Inc., formerly Ted W. Walters & Associates, Inc.[3] The last entity—Ted Walters and Associates, L.P.[4]—is a limited partnership, with Sendero as the general partner and Walters as a limited partner.

Milton A. Surles, an independent consultant geologist, contacted Ted Walters with plans for developing an area in Angelina County which the parties named the "Star Prospect." Michael

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]In September 2008, Harding Company assigned its leases to Harding Energy Partners, LLC, subject to the Harding Sendero Agreement. Harding Energy Partners, LLC, is an affiliate of Harding Company and assumed all of Harding Company's obligations. We will refer to Harding Company and Harding Energy Partners, LLC, collectively, as Harding.

[3]In 2005, Walters amended the articles of incorporation to change the name of Ted W. Walters & Associates, Inc., to TWW Tyler, Inc. When we distinguish this entity name from its current name (TWW Tyler), we will refer to this entity as "Associates, Inc."

[4]We will refer to this entity as "Associates, L.P."

2

R. Boney, a landman employed by Associates, L.P., conducted research on land titles and existing wells in the area of interest. Surles prepared cross-sections of well logs, and Sendero entered into some oil and gas leases. Harding's representatives met with Walters, Surles, and Boney, and eventually Harding decided to purchase the Star Prospect.

The parties prepared and signed an agreement. Walters e-mailed a sample agreement to Harding. The sample agreement provided that Harding shall contract with "Associates, Inc."[5] for landman services and pay rates "as mutually agreed." The parties negotiated changes, and Harding put the final draft on its letterhead, signed it, and e-mailed[6] it to Sendero. Walters, Surles, and Boney signed the agreement. The signed agreement was returned to Harding on the letterhead of "Associates, L.P."[7] Section 5 of the agreement contained a noncompete clause prohibiting Sendero, Surles, Boney, and "Walters"[8] from competing against Harding for oil and gas leases in the area. In 2007, Harding paid $15,000.00 to Sendero, Surles, and Boney as the "initial consideration" provided for in the agreement.

---

[5]The name had already been changed to TWW Tyler, Inc.

[6]Texas has adopted the Uniform Electronic Transactions Act (UETA). *See* TEX. BUS. & COM. CODE ANN. § 322.001–.021 (West 2009).

[7]Walters alleges Associates, Inc., was renamed Associates, L.P., in their brief. However, the record establishes Associates, Inc., was renamed TWW Tyler, Inc., and Associates, L.P., was a new entity created in 2005.

[8]The agreement defined "Walters" as Associates, Inc.

Either Associates, L.P., or TWW Tyler began researching land titles and acquiring leases for Harding.[9]   The new leases were nominally held by Sendero—at Harding's instruction to prevent competitors from discovering who was actually acquiring the leases.   The leases were to be assigned to Harding once a target acreage was met.   Harding argues TWW Tyler acquired sixty-eight leases covering approximately 3,346[10] mineral acres and Associates, L.P., invoiced Harding for a lease bonus consideration of $761,797.42.   The parties then agreed to expand the area of interest, and the agreement was amended to include 2,287,300 acres in Nacogdoches, Angelina, San Augustine, Sabine, Jasper, and Newton Counties.   Harding obtained 142,905.539 mineral acres in the area of interest from Black Stone Mineral Company, L.P., and Sugarberry Kirby, JV.   Walters alleges 146,261.6208 acres were acquired by Harding and were subject to the agreement.   In total, Harding paid Associates, L.P., $2,169,850.23 for land and leasing services.

In April 2008, Harding and Walters agreed Harding could have until August 15, 2008, to make any payments due under the contract.[11]   In July 2008, Boney informed Harding that TWW Tyler had been assisting Harding's competitors—EOG Resources, Inc., and Devon Energy,

[9]Harding alleges the work was performed by TWW Tyler and invoiced by Associates, L.P.   Walter testified Associates, Inc. (renamed TWW Tyler) performed the landmen services.   Elsewhere, Walters testified Associates, L.P., and TWW Tyler had merged for tax purposes and were actually the same entity.   Linda Russell, an employee of Associates, L.P., responsible for invoices, stated in her summary judgment affidavit that all of the landmen services were performed by employees of Associates, L.P., and all invoices for the landmen services were sent to Harding from Associates, L.P.

[10]Walters argues Sendero assigned 520 acres already obtained to Harding and acquired 3,368.8133 acres.

[11]Harding argues it was reorganizing after winding down a partnership with Exxon and beginning a partnership with Chesapeake Energy Company.   Walters argues Harding ran out of money.   The parties have not directed us to record cites.

4

Inc.—in acquiring leases in the area of interest.[12]  When confronted, Walters replied,

> You made the allegation that TWWINC [Associates, Inc., TWW Tyler] violated the non-compete provision of the Star Prospect Letter Agreement.  I do not remember signing that agreement on behalf of TWWINC.  That agreement says Harding will hire TWWINC to take leases in areas designated by Harding.  To my knowledge that is what occurred.  It never occurred to me TWWINC was to be bound under the non-compete provision of the Star Prospect AMI, and there was no way I could have afforded to have all those brokers stop working over such a large area for anyone but Harding.

Harding stopped making payments under the contract.  On September 17, 2008, Walters wrote a letter purporting to terminate the agreement for nonpayment.  In his deposition, Walters admitted that TWW Tyler or Associates, L.P., had done work for Devon Energy, Inc., but denied that they had worked for EOG Resources, Inc.  Walters admitted later in the deposition that they performed landman work for another company working for EOG Resources, Inc.

Sendero, Surles, and Boney brought suit alleging Harding failed to perform under the contract, and Harding brought suit against Sendero, TWW Tyler, Associates, L.P., and Walters alleging breach of the noncompete clause of the contract and numerous torts.  The two lawsuits were consolidated in the trial court.  Harding settled with Surles and Boney.[13]  Walters filed a motion for partial traditional summary judgment[14] and a motion for partial no-evidence summary

---

[12]Prior to the agreement, Walters had been doing work for Hunt Oil Company in the area of interest and had Harding's permission to continue this work.

[13]The record on appeal includes notice of the settlement with Surles.  Both sides concede a settlement was reached with Boney as well.

[14]To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Fort Worth*

judgment alleging Associates, Inc., TWW Tyler, Associates, L.P., and Ted W. Walters, in his personal capacity, were not parties to the written contract or its written amendment. The trial court granted both of Walters' motions and denied Harding's motion. Walters then filed a second motion for partial no-evidence summary judgment[15] alleging there was no evidence of fraudulent inducement, no evidence any party breached a fiduciary duty owed to Harding, no evidence the statute of frauds applies, and other additional grounds not relevant in this appeal. The trial court granted Walters' second motion for partial no-evidence summary judgment, awarded Sendero $965,701.14 in actual damages, plus prejudgment interest and attorney's fees, and awarded Associates, L.P., $680,245.22 in actual damages, plus prejudgment interest and attorney's fees.

---

*Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *City of Houston v. Clear Creek Basin Auth*., 589 S.W.2d 671 (Tex. 1979); *Baubles & Beads v. Louis Vuitton, S.A*., 766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ). The defendant must conclusively negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Sci. Spectrum v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546 (Tex. 1985); *see Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

[15]To prevail on a no-evidence motion for summary judgment, the movant must first allege there is no evidence of one or more specified elements of a claim or defense on which the nonmovant would have the burden of proof at trial. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see* TEX. R. CIV. P. 166a(i). A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of his or her claim. *DR Partners v. Floyd*, 228 S.W.3d 493, 497 (Tex. App.—Texarkana 2007, pet. denied); *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc*., 650 S.W.2d 61, 63 (Tex. 1983)).

Harding raises six issues on appeal. Harding argues the trial court erred in concluding TWW Tyler and Associates, L.P., were not parties to the contract and concluding Walters signed the contract only as president of Sendero. In the alternative, Harding contends TWW Tyler and Associates, L.P., breached a fiduciary duty each entity owed to Harding, which relieved Harding from any duty to perform. Harding also argues the contract between Harding and Sendero is unenforceable under the statute of frauds. Last, Harding claims the trial court erred in granting summary judgment because genuine issues of material fact exist concerning whether Walters committed fraud. Walters[16] raises a cross-issue claiming, if this Court reverses, Harding is bound by the trial court's unchallenged findings.

We conclude the trial court correctly held that Walters signed the contract only as an officer of Sendero, but the trial court erred in granting a final summary judgment. A fact issue exists as to whether TWW Tyler and Associates, L.P., acted as agents of Harding. Harding presented some evidence TWW Tyler and Associates, L.P., breached any such fiduciary duties to Harding. We overrule Harding's argument that the contract is unenforceable under the statute of frauds; the statute of frauds does not apply to this contract. We conclude the trial court also erred in granting summary judgment based on Harding's fraudulent inducement cause of action. Last, we overrule Walters' cross-issue—Harding will not be bound by the unchallenged findings.

---

[16]Unless otherwise specified, we will refer to the four Appellees—Sendero; TWW Tyler; Associates, L.P.; and Ted Walters—collectively as Walters.

## I.       TWW Tyler and Associates, L.P., Were Not Parties to the Contract

Harding argues TWW Tyler and Associates, L.P., were parties to the contract.   Walters responds that Ted W. Walters signed the contract only on behalf of Sendero and that an oral contract existed between Associates, L.P., and Harding.   The agreement provides in pertinent part:

> Sendero Resources, Inc. ("Sendero"), Michael R. Boney ("Boney"), and Milton A. Surles, Jr. ("Surles") on one hand and Harding Company ("Harding") on the other, hereto enter into this certain Letter Agreement, dated January 17, 2007 ("Agreement"). . . .
>
>        . . . .
>
> 1.   Harding shall contract with Ted W. Walters & Associates, Inc. ("Walters") for the purposes of acquiring Leases. . . .
> S, B, & S and Walters will use their best efforts to acquire Leases . . . .
>
>        . . . .
>
> 5.   S, B & S and Walters shall not compete directly or indirectly against Harding for any oil and gas rights in the Star AMI while this Agreement is in force and effect.   S, B & S and Walters will assist Harding in acquiring oil and gas rights in the Star AMI without first obtaining Harding's written consent.   Harding has the responsibility to determine the leasehold acreage to acquire in the Star AMI.

Walters signed the contract, which designated he was signing as the president of Sendero.

Harding argues the fact that Walters' signature reflects his corporate office is only "descriptio personae" and does not limit the capacity in which the person can be held liable. Harding cites a number of cases which have held a surety, who signed a personal guarantee of a

8

debt of the principal only in their official capacity, is still personally liable.[17]   In *Material Partnerships v. Ventura*, the Fourteenth District held "a signature alone will not create an ambiguity in otherwise clear guaranty language in the body of an instrument" and concluded that "[i]n such case, the corporate office may be construed a descriptio personae of the signator rather than indication of the capacity in which he signs."   102 S.W.3d at 259.   These cases, though, are distinguishable from the current case.   In these cases, the contract clearly contemplated personal liability.   In this case, the contract clearly contemplates an agreement with only the corporation.

The plain language of the agreement clearly indicates Walters signed the agreement only as president of Sendero.   First, the agreement states it is between Sendero, Boney, Surles, and Harding.   TWW Tyler and Associates, L.P., are omitted from this list.   Although the agreement later references former Associates, Inc., renamed TWW Tyler and defined as "Walters" in the contract, on six occasions, Associates, Inc., is not included in the list of parties to the agreement.[18] Second, Walters signed the contract as "president" under the heading "Sendero."   While the title only creates a presumption that Walters was acting in his corporate capacity for Sendero, there is nothing in the agreement to rebut this presumption.   We note Surles and Boney each signed the agreement in their personal capacity.   However, the agreement did not contain a blank for Ted W.

---

[17]*Material P'Ships v. Ventura*, 102 S.W.3d 252, 259 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Am. Petrofina Co. v. Bryan*, 519 S.W.2d 484, 487 (Tex. Civ. App.—El Paso 1975, no writ); *Marx v. Luling Co-op.*, 43 S.W. 596 (Tex. Civ. App.—Houston 1897, writ ref'd); *see Owens v. William H. Banks Warehouses, Inc.*, 202 F.2d 689, 693 (5th Cir. 1953).   Harding also cites *Federal Deposit Insurance Corp. v. K-D Leasing Co.*, 743 S.W.2d 774, 776 (Tex. App.—El Paso 1988, no writ), which found the promissory note was not signed in the appellees' personal capacities.
[18]The agreement defines the term "Parties" as Surles, Boney, Sendero, and Harding.

Walters in his personal capacity and, also, did not contain a blank for Associates, Inc. Unlike the cases cited by Harding, the contract treated the corporate entities separately and does not clearly indicate Ted W. Walters is liable in his personal capacity.

Harding argues that the Court must find that TWW Tyler and Associates, L.P., are parties to the contract because any other conclusion would render provisions of the contract meaningless. While the general rule is that a contract should be interpreted so that none of its provisions are meaningless, this rule is qualified with the phrase "if possible." A general rule of contract construction cannot be used to bind a party to a contract it did not sign. "A person is not made a party to a contract merely by being named and described in it or merely by the fact that such a contract is referred to in a second instrument in a way to evidence that such person is a party in another contract." *Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir. 1967). The case of *Willis v. Donnelly*, 199 S.W.3d 262, 273 (Tex. 2006), is similar to this case. In *Willis*, the contract named Willis in his personal capacity, but Willis crossed out the signature block for his personal capacity and then signed only in his corporate capacity. *Id.* The Texas Supreme Court held Willis signed only in his corporate capacity. *Id.* Because the contract named Willis in his personal capacity, the effect of the Texas Supreme Court's conclusion that Willis did not sign in his personal capacity was to render provisions of that contract meaningless. Thus, the general rule that a contract should be interpreted so that none of its provisions are meaningless does not control when a named party does not assent to a contract.

10

Harding argues that Walters, who had actual and apparent authority to bind all three entities, drafted the original provisions and therefore should be held to have bound all three corporations. But, merely being in a position to bind a corporation does not mean the person actually bound the corporation. "Where a corporation enters into a contract, the officer's signature on the contract, with or without a designation as to his representative capacity, does not render him personally liable under the contract." *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App.—Tyler 2006, pet. denied). As discussed above, the plain language of the contract indicates Walters signed in his corporate capacity as president of Sendero.

Next, Harding argues, because Sendero contracted with TWW Tyler and Associates, L.P., it is liable. Harding cites *Seagull Energy E&P*, *Inc. v. Eland Energy*, *Inc.*, 207 S.W.3d 342, 346 (Tex. 2006), for the proposition that a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract. Harding, though, has not presented any evidence that Sendero assigned any rights and duties to TWW Tyler or Associates, L.P. The contract states, "Harding shall contract with Ted W. Walters & Associates, Inc. (Walters) for the purposes of acquiring Leases." The only obligation exclusive to Sendero in the contract was the obligation to hold title in its name for Harding. There is no evidence this duty was assigned to TWW Tyler or Associates, L.P. We conclude the trial court did not err in concluding TWW Tyler and Associates, L.P., were not parties to the contract.[19]

---

[19]We note Walters argues the parol evidence rule bars admission of certain pieces of evidence concerning the contract. Because we have found that TWW Tyler and Associates, L.P., were not parties to the contract, it is not necessary to

11

## II.     Fiduciary Duty

Harding's second and third issues contend TWW Tyler and/or Associates, L.P., breached fiduciary duties they owed to Harding.  Harding alleges two methods for the existence of fiduciary duties:    the existence of an agency relationship and a duty imposed by the code of ethics of the American Association of Petroleum Landmen.  Harding claims TWW Tyler agreed to act as its agent for the purposes of performing land title research and leasing in the area of interest.  Harding claims, because the landman code of ethics requires a duty of loyalty, etc., an agency relationship existed as a matter of law.[20]  Walters responds that no fiduciary duty existed and the trial court correctly refused to consider the landman code of ethics, which was not competent summary judgment evidence.

### A.     Were TWW Tyler and Associates, L.P., Harding's Agents?

---

decide this issue.   Harding argues, in its third issue, that Sendero performed no acts under the contract and therefore is not entitled to recover.   Harding argues Sendero merely held title in its name, which is a ministerial act and is not entitled to compensation.   Harding does not cite any authority for this argument.   We are not aware of any authority permitting us to rewrite the terms of a contract merely because one party only performs ministerial acts.   Harding also argues there was a failure of consideration.   We disagree.   Sendero holding title in its name is sufficient consideration.

[20]Even if the landman code of ethics was proper evidence, rules of professional conduct do not define standards of civil liability.  *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 158 n.2 (Tex. 2004).

Harding argues TWW Tyler and Associates, L.P., owed it fiduciary duties, which were breached. Harding first argues that the scope of this agency relationship was defined by the agreement.[21] Harding alternatively argues TWW Tyler and Associates, L.P., "consented to act for Harding, and in fact did act under HC's complete and direct control as Harding's exclusive agent for all land services in the AMI."

Although an agency relationship cannot be presumed,[22] an agency relationship may be implied from the conduct of the parties or from the facts and circumstances surrounding the transaction in question. *See CNOOC Se. Asia Ltd. v. Paladin Res. (Sunda) Ltd*., 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied); *Walker Ins. Servs. v. Bottle Rock Power Corp*., 108 S.W.3d 538, 550 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

"An agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal." *First Nat'l Acceptance Co. v. Bishop*, 187 S.W.3d 710, 714 (Tex. App.—Corpus Christi 2006, no pet.). This Court has noted:

> An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent. . . . This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task.

---

[21]According to Harding, because the contract required TWW Tyler and Associates, L.P., to act for Harding and did act for Harding, an agency relationship existed. As discussed above, we have concluded TWW Tyler and Associates, L.P., were not parties to the contract. Therefore, we reject this argument.

[22]*IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007).

13

*Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied) (citations omitted).

Although TWW Tyler and Associates, L.P., were not parties to the above-mentioned contract,[23] some evidence indicates they were operating under the control and direction of Harding and for the benefit of Harding. It is uncontested that TWW Tyler and Associates, L.P., acquired leases in the area specified by Harding, in the manner specified by Harding, and for the benefit of Harding. Harding paid Associates, L.P., $2,169,850.23 for lease bonuses to obtain the leases and for land and leasing services. In this summary judgment proceeding, the facts were not fully developed, but the evidence presented indicates a fact question exists as to whether Harding exercised the requisite control in assigning tasks and dictating the means and details by which TWW Tyler and Associates, L.P., would accomplish the task.[24]

Walters does not specifically deny the existence of an agency relationship with Harding, but argues there is no evidence the relationship existed "before and apart from" the business

---

[23]We are not implying some form of contractual relationship did not exist. Walters testified a verbal contractual relationship existed. It is not necessary for this Court to determine the exact nature of the contractual relationship between the parties.

[24]We note, if the facts are uncontroverted or otherwise established, the existence of an agency relationship is a pure question of law. *See First Nat'l Acceptance Co.*, 187 S.W.3d at 714; *Ross v. Tex. One P'ship*, 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990), *writ denied*, 806 S.W.2d 222 (Tex. 1991); *Cain v. Tennessee-Louisiana Oil Co.*, 382 S.W.2d 794, 798 (Tex. Civ. App.—Tyler 1964), *aff'd*, 400 S.W.2d 318 (Tex. 1966). These cases, though, involve appeals following a trial. The facts in the above cases were fully developed. This is an appeal from a summary judgment and the facts are not fully developed. While many of the facts are undisputed, multiple conclusions could be inferred from those facts. Given that the facts are not fully developed, we conclude the ordinary summary judgment standards should apply. *See Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 404 (Tex. App.—El Paso 2008, pet. denied) (agency is generally question of fact); *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 800–01 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ("The status of agency is one of ultimate fact derived from underlying facts . . . .").

relationship in dispute. The requirement that a special relationship of trust exist prior to and apart from a contractual agreement is a requirement unique to informal fiduciary relationships. The Texas Supreme Court has noted, "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (quoting *Associated Indem. Corp. v. Cat Contracting Corp.*, 964 S.W.2d 276, 288 (Tex. 1998)). The fiduciary relationship in question is a formal fiduciary relationship, not an informal fiduciary relationship. An agency relationship creates, as a matter of law, a fiduciary relationship. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002). A fiduciary relationship alleged in this case would be created by an agency relationship, not by a special informal relationship of trust and confidence that had previously existed. Harding was not required to introduce evidence of a special relationship of trust before and apart from the business relationship.

Walter cites *National Plan Administrators, Inc. v. National Health Insurance Co.*, 235 S.W.3d 695, 700 (Tex. 2007), in support of its argument that no fiduciary relationship existed. *National Plan Administrators*, though, is factually distinguishable from the current case. *National Plan Administrators* concerned a case where the agency relationship was explicitly created by a contract and the contract limited the scope of the agency relationship. *Id*. The parties agreed the alleged agent "shall act as an independent contractor in the performance of

15

responsibilities formed under this Agreement, and that [NPA's] services are not exclusive to National Health and that [NPA] will provide services to third parties." *Id.* Although noting a special agency may have existed, the Texas Supreme Court concluded a general agency did not exist as a matter of law based on the agreed contract terms. *Id.* In this case, the alleged agency relationship is not defined and limited by a contract—if an agency relationship exists, it is based upon the conduct of the parties.

Walters also cites a number of cases for the proposition that Texas courts have repeatedly rejected a fiduciary relationship exists between parties in similar circumstances.[25] None of these cases, though, involve an agency relationship. As such, these cases are distinguishable from this case.

A fact issue exists as to whether TWW Tyler and Associates, L.P., were acting as Harding's agents when they acquired leases on Harding's behalf and in the manner specified by Harding. If, on remand, the evidence sufficiently supports the finding of an agency relationship,

---

[25]*See Willis*, 199 S.W.3d at 277 (rejecting argument that corporation acted as agent for its shareholders and rejecting argument that fiduciary duty existed between shareholders based on relationship of trust and confidence); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997) (no evidence of partnership or confidential relationship between parties); *Anglo-Dutch Petroleum Int'l, Inc. v. Smith*, 243 S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (rejecting fiduciary duty based on relationship of trust and confidence between parties to arms-length contractual arrangement); *Scott v. Scruggs*, 836 S.W.2d 278, 282 (Tex. App.—Texarkana 1992, writ denied) (concluding no formal fiduciary relationship existed between cotenants and rejecting argument that informal fiduciary relationship existed); *Pickens v. Hope*, 764 S.W.2d 256, 268 (Tex. App.—San Antonio 1988, writ denied) (nonparticipating mineral owner owed duty of good faith and utmost fair dealing, not fiduciary duty); *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 563 (Tex. App.—Corpus Christi 1983 writ ref'd n.r.e.) (failed to raise fact issue that dealings between parties have continued for such a period of time that one party was justified in relying on other to act in his best interest); *Grimes v. Walsh & Watts, Inc.*, 649 S.W.2d 724, 728 (Tex. App.—El Paso 1983, writ ref'd n.r.e.) (mere assignment of oil and gas lease does not create fiduciary relationship and no evidence one existed based on relationship of trust and confidence).

then a fiduciary duty necessarily will be imposed.

### B. Evidence of Breach of Fiduciary Duty by TWW Tyler and Associates, L.P.

Due to the special nature of the relationship, an agency relationship imposes certain fiduciary duties on the parties. *See Johnson*, 73 S.W.3d at 200. These duties include the duty of loyalty.[26] *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 337 (Tex. 1968); *Hartford Cas. Ins. Co. v. Walker County Agency*, *Inc.*, 808 S.W.2d 681, 688 (Tex. App.—Corpus Christi 1991, no writ). The Texas Supreme Court has recently reaffirmed, "Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." *Nat'l Plan Adm'rs*, *Inc.*, 235 S.W.3d at 700 (quoting *Johnson*, 73 S.W.3d at 199); *see* RESTATEMENT (SECOND) OF AGENCY § 391 (LEXIS through 2011) ("Unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency without the principal's knowledge."); RESTATEMENT (SECOND) OF AGENCY § 387 (LEXIS through 2011) ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."); *see also* RESTATEMENT (THIRD) OF AGENCY § 8.04 (LEXIS through 2011) ("Throughout the duration of an agency relationship, an agent has a duty to refrain from competing

---

[26]We note that the Texas Supreme Court has held an employee does not owe his or her employer an absolute duty of loyalty and that the duty of loyalty in this context must be "tempered by society's legitimate interest in encouraging competition." *Johnson*, 73 S.W.3d at 201; *see* RESTATEMENT (THIRD) OF AGENCY § 8.04 (LEXIS through 2011) (During the duration of an agency relationship, "an agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship."). Walters does not argue a public policy exists which tempers the duty of loyalty owed under the circumstances presented here. Walters limits its argument to whether fiduciary duties existed. Further, as discussed below, the actions of TWW Tyler and Associates, L.P., exceeded mere preparation for competition.

17

with the principal and from taking action on behalf of or otherwise assisting the principal's competitors.").

Assuming that an agency relationship existed, the record contains some evidence that TWW Tyler and Associates, L.P., violated their alleged duty of loyalty to Harding. Walters admitted TWW Tyler or Associates, L.P., had acquired leases for Devon Energy, Inc., in the area of mutual interest and performed work for another landman company who was working for EOG Resources, Inc. The record established Devon Energy, Inc., and EOG Resources, Inc., are competitors of Harding. The trial court erred in granting a no-evidence summary judgment on Harding's breach of fiduciary duty claims.

## C. Harding Is Not Excused from Performing the Contract

We note Harding argues that the breach of fiduciary duty by TWW Tyler and Associates, L.P., excused Harding's failure to perform the contract. Harding alleges (1) Sendero is liable because Ted W. Walters owned all three entities; (2) Sendero assisted TWW Tyler and Associates, L.P.; and (3) TWW Tyler and Associates, L.P., were Sendero's agents and, therefore, Sendero's failure to control their behavior was a breach of the noncompete clause.

Since we have found Walters was not a party to the written contract, Walters' fiduciary duty is imposed only if an agency relationship existed between the parties, not on the written contract.

Harding has not provided this Court with any legal authority or legal theory for why common ownership permits this Court to disregard the corporate entities. Although Harding pled that the corporate veil should be pierced, the trial court did not disregard the corporate entities and Harding does not complain about this failure on appeal. Harding has not provided this Court with any authority that a breach of fiduciary duty by one distinct legal entity can excuse a party's failure to perform its obligations under a contract to a different distinct legal entity.[27]

Harding additionally argues that Sendero assisted TWW Tyler and Associates, L.P., in breaching their fiduciary duties to Harding and, therefore, Sendero violated the noncompete clause of the contract. Harding cites *Kinzbach Tool Co. v. Corbett-Wallace Corp.* for the proposition that a third party who knowingly assists in the breach of fiduciary duty is a joint tortfeasor and liable for said breach. 160 S.W.2d 509, 511 (Tex. 1942). Harding, though, has not directed this Court to evidence in the record that Sendero assisted TWW Tyler or Associates, L.P. The mere fact that all three entities are owned by the same person is not evidence that Sendero assisted TWW Tyler or Associates, L.P.

---

[27]We note Harding's arguments are extremely similar to the single business enterprise theory. Under this theory, corporations which are not operated as separate entities, "but rather integrate their resources to achieve a common business purpose," are treated as the same entity for liability purposes. *See Paramont Petroleum Corp. v. Taylor*, 712 S.W.2d 534 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e). The Texas Supreme Court has rejected the single business enterprise theory. *SSP Partners v. Gladstrong Invs. Corp.*, 275 S.W.3d 444, 456 (Tex. 2008).

19

Finally, Harding argues that TWW Tyler and Associates, L.P., acted as Sendero's agents. Because these entities were Sendero's agents and acted under Sendero's control, Harding argues Sendero violated the noncompete clause. The record does not contain any evidence of an agreement for TWW Tyler or Associates, L.P., to act as Sendero's agent—either explicit or implied. There is no evidence that Sendero assigned any of its duties under the contract to either entity. Further, the record does not contain any evidence that Sendero had any right to control the activities of TWW Tyler or Associates, L.P. The evidence establishes TWW Tyler and Associates, L.P., acted for the benefit of Harding—not for the benefit of Sendero—and under terms specified by Harding—not under terms specified by Sendero. An agency relationship will not be presumed and there is no evidence TWW Tyler and Associates, L.P., were Sendero's agents. We overrule Harding's argument that the alleged breach of fiduciary duty by TWW Tyler and Associates, L.P., excused Harding's failure to perform contractual duties owed to Sendero.

### III. Harding Cannot Raise the Statute of Frauds Defense

In its fourth issue, Harding argues the statute of frauds bars enforcement[28] of the contract because the writing contains an inadequate property description[29] of the real property.[30] Sendero

---

[28]The statute of frauds merely renders such a contract voidable and unenforceable against an objecting party. *Bass v. Bass*, 790 S.W.2d 113, 117 (Tex. App.—Fort Worth 1990, no writ).

[29]The written contract relied on to satisfy the statute of frauds must be complete in every material detail and must contain all the essentials of a contract so that the agreement may be ascertained from the writings without resort to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978); *see Long Trusts v. Robert M. Griffin*, 222 S.W.3d 412, 413 (Tex. 2006); *Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191 (Tex. App.—Tyler 2004, pet. denied).

[30]The Statute of Frauds applies to

responds that the statute of frauds does not apply to joint acquisitions of land, citing *Ganim v. Alattar*, No. 10-0592, 2011 Tex. LEXIS 454 (Tex. June 24, 2011), *reh'g granted* (Tex. Jan. 20, 2012) (publication status pending). It is not necessary for us to decide whether the statute of frauds applies to joint acquisitions of land. Because Harding accepted assignment of the mineral leases for which payment is being sought, Harding is prevented from raising the statute of frauds as a defense. When a party accepts assignment of mineral leases, the statute of frauds cannot be raised as a defense to payment. *Eland Energy v. Rowden Oil & Gas*, 914 S.W.2d 179, 186 (Tex. App.—San Antonio 1995, pet. denied); *Anderson v. Eliot*, 333 S.W.2d 654, 656 (Tex. Civ. App.—Eastland 1960, writ ref'd); *Osborn v. Cone*, 234 S.W.2d 88, 90 (Tex. Civ. App.—Fort Worth 1950, no writ); *see* 41 TEX. JUR. 3D *Frauds, Statute of* § 117 (2007) ("After the delivery and acceptance of a conveyance in fulfillment for the transfer of land, the statute of frauds has no application to the oral promise of the transferee and the purchase money may be collected,

---

   . . . .

(4) a contract for the sale of real estate;

   . . . .

(7) a promise or agreement to pay a commission for the sale or purchase of:
    (A) an oil or gas mining lease;
    (B) an oil or gas royalty;
    (C) minerals; or
    (D) a mineral interest; . . . .

TEX. BUS. & COM. CODE ANN. § 26.01(b) (West 2009). In general, because oil and gas interests are real property, "contracts for the transfer or assignment of oil and gas interests are subject to the Statute of Frauds." *Long Trusts*, 222 S.W.3d at 416; *see Consol. Gas & Equip. Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966).

notwithstanding the absence of a promise in writing . . .").  Harding has not contested that Sendero assigned all of the mineral leases it acquired for Harding.[31]  Indeed, Harding prepared a spreadsheet acknowledging the mineral leases acquired by Sendero and transferred to Harding, as well as calculating the amount Harding owed Sendero for the work performed.  Harding has acknowledged delivery and acceptance of the mineral leases, and therefore, the statute of frauds has no application.

## IV.    Evidence of Fraudulent Inducement

Harding argues the trial court erred in finding there was no evidence of fraudulent inducement.[32]  A fraudulent inducement claim requires a party to establish the elements of fraud "as they relate to an agreement between the parties."  *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).   The elements of fraud are:    (1) the speaker made a material representation that was false; (2) the speaker knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker intended to induce the other party to act upon the representation; and (4) the other party actually and justifiably relied upon the representation and thereby suffered injury.   *Ernst & Young*, *L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

---

[31] The assignments contained in the record contain a signature by a representative of Harding acknowledging the transfer.

[32] Harding also cites TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009), for the proposition that Walters committed statutory real estate fraud.   Harding does not otherwise brief statutory real estate fraud.   Because we concluded that fact issues exist concerning fraudulent inducement, it is not necessary for us to address whether there is some evidence of statutory real estate fraud.

The first issue is whether the speaker made a material representation that was false. Harding argues the noncompete clause of the contract is a misrepresentation. As noted above, Walters drafted the original agreement and later said he never intended TWW Tyler or Associates, L.P., to be bound by that agreement even though the final agreement, which he signed for Sendero, clearly states that "Walters" (identified as Ted W. Walters & Associates, Inc.) which was renamed TWW Tyler, would not compete against Harding. Walters argues, since TWW Tyler was not a party, there was no misrepresentation. We disagree. A false representation must concern a "material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation." *Hicks v. Wright*, 564 S.W.2d 785, 791 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.). The express misrepresentation is that TWW Tyler would not compete, not that TWW Tyler was a party to the contract.[33] We further note a person could reasonably conclude Walters could make such a promise given that Walters was the sole shareholder of TWW Tyler and also TWW Tyler's principal. Walters also argues this fact was not material. Harding presented evidence that it would not have entered the agreement without the noncompete clause and that it even attempted to obtain noncompete agreements from all potential investors to whom Harding

---

[33]On rehearing, Sendero argues Harding only argued, in the trial court, that Walters misrepresented whether TWW Tyler was a party to the agreement. Sendero further argues, citing *Fina Supply v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987), that the legal effect of a document fails to qualify as a misrepresentation. We note that Harding argued in its summary judgment response both that Walters misrepresented that TWW Tyler was a party to the contract and misrepresented that TWW Tyler would not compete. We wish to emphasize that our opinion relies on the misrepresentation that TWW Tyler would not compete—a statement of fact, not a claim about the legal effect of a document.

23

showed the prospect. There is more than a scintilla of evidence the representation was false and material.

Second, there is more than a scintilla of evidence that Walters knew the allegation was false or acted recklessly without any knowledge of its truth. Walters argues he did not discover the fact that the Agreement mistakenly referred to "Ted W. Walters & Associates, Inc.," until more than a year after the Agreement was signed. The record, though, clearly establishes Walters knew the contract mentioned one of his companies which did not sign the contract. The mistake concerned the name of the company. Walters stated in an affidavit,

> I sent Harding a form of an agreement that had been originally drafted before the creation of Associates, LP on December 22, 2005, and before Associates Inc. changed its name to TWW Tyler, Inc. on December 22, 2005 . . . . As a result this form mistakenly referred to Associates Inc. instead of to Associates LP . . . . I did not become aware of this mistake until sometime in 2008.

The express representation was that Associates, Inc. (TWW Tyler) would not compete against Harding for oil and gas rights in the AMI. Walters signed the document containing this representation and later indicated he never intended TWW Tyler to be bound by the noncompete clause. There is more than a scintilla of evidence Walters knew the allegation was false or acted recklessly as to the positive assertion without any knowledge of its truth.

The next issue is intent. Fraudulent intent may be established by either direct or circumstantial evidence. *Johnson & Higgins of Tex.*, *Inc. v. Kenneco Energy*, *Inc.*, 962 S.W.2d 507, 526 (Tex. 1998); *Formosa Plastics Corp., USA v. Presidio Engr's & Contractors, Inc.*, 960

24

S.W.2d 41, 47–48 (Tex. 1998). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours*, *Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). The circumstances of this case are sufficient to create a fact issue concerning whether Walters had the requisite intent.

Harding presented evidence of reliance and injury. Harding also presented evidence that it would not have entered the agreement without the noncompete clause. A rational juror could infer from the circumstantial evidence that Walters intended Harding to rely on the noncompete clause. The fact that the original proposal did not contain the noncompete agreement by Walters, but the final signed contract did supports the assertion that such provision was a result of negotiation on which Harding relied.

Walters argues there was no evidence Harding suffered damages. Harding presented more than a scintilla of evidence that it entered into a contract it would not have agreed to absent the misrepresentations.[34] This is some evidence Harding suffered an injury. Further, Walters did not make this argument in its second motion for a no-evidence partial summary judgment.[35]

On rehearing, Sendero argues, as a distinct legal entity, it cannot be liable for any misrepresentations, if any, made by Walters and argues Harding never asserted this defense

---

[34]Harding alleges the initial $15,000.00 payment it made under the contract establishes damages.

[35]On appeal, our review is limited to the grounds presented to the trial court in the motion for summary judgment and response. *Stephens v. City of Reno*, 342 S.W.3d 249, 253 (Tex. App.—Texarkana 2011, no pet.).

25

against Sendero.[36]   We disagree.   "The acts of a corporate agent on behalf of the principal are ordinarily deemed to be the corporation's acts."   *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.—Dallas 2007, no pet.).   When Walters made the alleged misrepresentations, he was acting on behalf of Sendero.   Thus, any misrepresentations made by Walters are deemed to be Sendero's acts.

Harding presented some evidence of each element of fraudulent inducement.   The trial court erred in granting the no-evidence summary judgment.

## V.      Harding Is Not Bound by the Unchallenged Findings

Walters argues Harding will be bound by the unchallenged findings of the trial court if we do reverse the summary judgment.   The cases cited by Walters do not support his argument.   In *Spin Doctor Golf*, *Inc. v. Paymentech*, *L.P.*, the Dallas court stated,

> When an appellant fails to brief one of the grounds for summary judgment, any error is waived as to the granting of that ground for summary judgment.   *Smith v. Tilton*, 3 S.W.3d 77, 83, 87 (Tex. App.—Dallas 1999, no pet.).   Accordingly, Spin Doctor has waived review of summary judgment on its tort and forgery claims.

296 S.W.3d 354, 362 (Tex. App.—Dallas 2009, pet. denied).   In *Heard v. Moore*, this Court stated,

> When a party raises a contention as an issue on appeal, the party's brief must contain argument or authority to support it.   TEX. R. APP. P. 38.1(h).   In order to maintain a point on appeal, an appellant must provide a discussion of the facts and authorities on which it relies.   A failure to discuss relevant facts and authority

---

[36]Sendero argues that Harding only pled fraudulent inducement against Walters in his personal capacity.   Harding specifically pled that fraudulent inducement excused its performance under the contract in its second amended pleading and argued fraudulent inducement excused performance in its summary judgment response.

results in a waiver of the point on appeal.

101 S.W.3d 726, 730 (Tex. App.—Texarkana 2003, pet. denied). Both cases merely hold the issues have been waived "on appeal." Neither case says the issues will be binding on remand. We further note the Texas Supreme Court has held, if a summary judgment is reversed, the parties are not limited to the theories in the original summary judgment at a later trial on the merits. *Hudson v. Wakefield*, 711 S.W.2d 628, 630–31 (Tex. 1986).

We note the law of the case doctrine is similar to the argument being advanced by Walters. Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case. *Briscoe v. Goodmark Corp*., 102 S.W.3d 714, 716 (Tex. 2003). The law of the case doctrine provides as follows:

> The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. The doctrine is based on public policy and is aimed at putting an end to litigation.

*Id*. (quoting *Hudson*, 711 S.W.2d at 630 (citations omitted)). The law of the case doctrine only applies to claims fully litigated and determined in a prior interlocutory appeal; it does not apply to claims that have not been fully litigated and determined. *Id*. Thus, the unchallenged findings are not binding on Harding under the law of the case doctrine.

## VI. Conclusion

We affirm the judgment of the trial court in part, reverse the judgment of the trial court in

27

part, and remand to the trial court for further proceedings consistent with this opinion.

We affirm a partial summary judgment on Harding's breach of contract claims against TWW Tyler and Associates, L.P. Walters signed the contract only in his corporate capacity as president of Sendero. TWW Tyler and Associates, L.P., did not expressly assent to the contract and were not parties to the contract. We also affirm a partial summary judgment that the statute of frauds does not apply to the contract between Harding and Sendero. We affirm the trial court's holding on these two limited issues.[37]

We reverse the trial court's order granting a final summary judgment. Harding introduced more than a scintilla of evidence concerning breach of fiduciary duty and fraudulent inducement. We conclude that a fact issue exists as to whether TWW Tyler and Associates, L.P., acted as Harding's agents and thereby owed Harding fiduciary duties, including the duty of loyalty. Harding presented some evidence TWW Tyler and Associates, L.P., breached any such fiduciary duties. Harding also presented some evidence Walters fraudulently induced Harding to sign the contract. The trial court erred in granting a no-evidence summary judgment on the breach of fiduciary duty and fraudulent inducement claims. Because one remedy for fraudulent inducement

---

[37]These issues have been fully litigated and are binding under the law of the case doctrine on remand. We note, though, that the law of the case doctrine only binds the parties concerning claims fully litigated and decided in this opinion. The law of the case doctrine does not apply to issues which have not been challenged in this appeal.

28

is rescission of the contract,[38] the trial court erred in granting summary judgment on the breach of contract claims.

We remand this case to the trial court for further proceedings consistent with this opinion.

Jack Carter
Justice

Date Submitted:     November 16, 2011
Date Decided:       February 29, 2012

---

[38]*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011).